NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE:<br><br>CENTRIX FINANCIAL, LLC, et al.<br><br>Debtors.<br><br>CENTRIX FINANCIAL LIQUIDATING TRUST and JEFFREY A. WEINMAN in his capacity as Trustee for the Centrix Financial Liquidating Trust,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., and AIG DOMESTIC CLAIMS, INC.,<br><br>Defendants. | Civil Action No. 12-6471 (AET)<br><br>MEMORANDUM OPINION |

This matter comes before the Court upon non-parties Everest National Insurance Company and Everest Reinsurance Company's (collectively "Everest") motion pursuant to FED.R.CIV.P. 45(c)(3) to quash or modify subpoenas served upon them. [Docket Entry No. 1]. Defendants National Union Fire Insurance Company of Pittsburgh, PA, and Chartis Claims, Inc. (f/k/a/ AIG Domestic Claims) (collectively "AIG") oppose Everest's motion. [Docket Entry No. 5]. The Court has fully reviewed and considered all of the papers submitted in support of and in opposition to Everest's motion and considers same without oral argument pursuant to

FED.R.CIV.P. 78.  For the reasons set forth more fully below, consistent with this Memorandum Opinion and the accompanying Order, Everest's motion to quash is GRANTED.

I.     **Background and Procedural History**

The procedural history of this matter dates back to the filing of bankruptcy by Centrix Financial, LLC ("Centrix") in the District of Colorado.[1]  In March of 2007, Everest filed an adversary proceeding against Centrix alleging that officers at Centrix had defrauded Everest. That case was relatively short-lived, having been administratively terminated in November of 2008.  The instant case arises from another adversary proceeding filed by the Centrix Trust ("Trust") "against AIG, seeking insurance coverage under a Financial Institution Bond ("Fidelity Bond") issued by National Union." *Everest's Brief in Support,* [Docket Entry No. 1-1, *4].  The Trust alleges that officers at Centrix fraudulently diverted funds and argues that the Fidelity Bond should cover any such losses.  The main issue in that proceeding is "when the insured under the Fidelity Bond, Centrix, knew of the facts giving rise to the claim for which the Trust seeks insurance coverage and whether Centrix gave timely notice to AIG." *Id.*

The current dispute involves Everest's efforts to quash the subpoenas served on them on in June 2012.[2]  AIG seeks to ascertain when Everest first became aware of the facts, specifically, "bad acts" of Centrix personnel, that ultimately comprised its adversary proceeding against Centrix. *Id.* at 5.  The subpoenas call for a Rule 30(b)(6) deposition of the "most knowledgeable person" to testify regarding the following:

---

[1] It is unclear from the moving papers when exactly the bankruptcy case was filed.

[2] Copies of the subpoenas are attached to Everest's Motion under the respective certifications of Fred L. Alvarez and Joan Schwab. [Docket Entry Nos. 1-2, 1-3].

1. When Everest, or anyone acting for or on Everest's behalf, whether an agent, employee, consultant, advisor, attorney, or representative, first became aware of facts alleged in the "Statement of Facts" alleged in the Complaint filed on March 14, 2007, in Case No. 3:07-cv-01236-JAP-JJH in the United States District Court for the District of New Jersey.

2. The specific documents that Everest relied upon when drafting the allegations in the Complaint filed on March 14, 2007, in Case No. 3:07-cv-01236-JAP-JJH in the United States District Court for the District of New Jersey.

3. All communications, whether oral or in writing, between Everest and Centrix Financial, LLC - including all of its affiliates, parents, subsidiaries, divisions, their predecessors, successors, directors, officers, representatives, agents, employees, advisors, consultants, attorneys, and other persons acting or purporting to act on their behalf, including, but not limited to, Timothy Boates, attorneys from Squire Sanders, and attorneys from Brown Rudnick - in the time period prior to and including March 14, 2007, concerning or relating to the allegations in the Complaint filed on March 14, 2007, in Case No. 3:07-cv-01236-JAP-JJH in the United States District Court for the District of New Jersey.

4. All communications, whether oral or in writing, between Everest and the Committee of Unsecured Creditors for Centrix Financial, LLC - including all of its affiliates, parents, subsidiaries, divisions, their predecessors, successors, directors, officers, representatives, agents, employees, advisors, consultants, attorneys, and other persons acting or purporting to act on their behalf, including, but not limited to, FTI Consulting and attorneys from Foley & Lardner- concerning or relating to the allegations in the Complaint filed on March 14, 2007, in Case No. 3:07-cv-01236-JAP-JJH in the United States District Court for the District of New Jersey.

5. Whether, when, and how Everest was aware of the existence of the Financial Institution Bond issued by National Union to Centrix Financial with an effective date

>    of May 29, 2006, bearing Policy Number 672-28-24
>    ("Fidelity Bond") prior to March 14, 2007.

(Ex. A, Attachment A to Certification of Fred L. Alvarez, Esq.)


II.     **Arguments**

   **A. Everest's Argument**

Everest argues that the subpoenas are irrelevant and unduly burdensome.[3] To the extent that such requested information is in fact relevant, Everest argues that the subpoenas would result in the production of material that is available from other sources and therefore, such production would be duplicative. Lastly, Everest argues that, to the extent that correspondence between Everest and their attorneys is sought, such communications are protected by the attorney-client privilege.

Everest places heavy emphasis on the fact that they are a non-party to this litigation. Everest cites to case law which holds that "where information sought from non-party could be obtained from documents already available to the party, subpoena was unduly burdensome and quashed." *Everest's Brief in Support*, [Docket Entry No. 1-1, *12]. *See Graham v. Casey's General Stores,* 206 F.R.D. 251, 254-55 (S.D. Ind. 2002). Everest argues that any communications between them and Centrix are just as easily obtained from Centrix, a party to this litigation. Additionally, Everest argues that the information sought by the subpoenas is irrelevant because it seeks Everest's knowledge in order to establish Centrix's knowledge.

---

[3]In Everest's moving brief, they argue improper service of the subpoenas. However, this argument was withdrawn as per David J. D'Aloia's letter dated October 19, 2012 [Docket Entry No. 4].

Everest claims that "Everest's knowledge prior to filing the Everest Lawsuit has no bearing whatsoever on *Centrix's* knowledge, and thus is not relevant[.]" *Id.* at 13.

To the extent that such testimony from Everest would be relevant, Everest claims that AIG already possesses it. Everest states that they "largely gleaned the facts included in [their] complaint from discovery in the captioned bankruptcy proceeding, and thus anything it could provide would be duplicative of documents in Centrix's control." *Id.* at 14. Therefore, Everest argues, should the testimony be compelled, it would simply point AIG back to Centrix's bankruptcy filing and the documents therein. Furthermore, as to the specific documents that Everest relied upon in drafting their complaint, Everest claims that such documents "were largely identified in the complaint" and cites to several examples in the complaint where specific documents were mentioned. *Id.* To the extent that such documents were not identified in the complaint, Everest argues that it would be "extremely burdensome for [them] to attempt to identify, more than five years later, all the specific documents that were relied upon by its attorneys in drafting the complaint. *Id*. at 5.

Everest submits and relies heavily on the affidavit of Kevin Helewa, Associate General Counsel and Vice President of Everest Reinsurance Company, and the person "most knowledgeabl[e]" at Everest. *Id.* at 6. Mr. Helewa testifies that that he has no recollection of communications between Everest and Centrix and that attempting to locate such communications could take several weeks. *Id.* at 5, citing Helewa Aff., ¶13. Mr. Helewa states that "[n]o record of the specific documents relied upon, other than what is stated in the complaint, was kept" and that an undertaking to locate them would require review of over forty boxes of documents, "thousands of e-mails as well as discussions with certain employees and representatives from

5

Everest…certain of whom are no longer with [] Everest." *Id*. at ¶¶8, 12. Everest concludes that any conceivable benefit that could be gained from such an undertaking is certainly outweighed by the burden it imposes on Everest.

Lastly, to the extent that the subpoenas seek communications from attorneys, Everest contends that "counsel's mental impressions that lead to the drafting of the complaint and communications between Everest and its outside counsel in preparation for the filing of the Everest Lawsuit" is material protected by the attorney-client privilege and therefore, not discoverable. *Everest's Brief in Support,* [Docket Entry No. 1-1, *16].

### B. AIG's Argument

AIG initially responds by rebuking Everest's claim that, as a non-party, they are disinterested in this case. AIG indicates that Everest is an unsecured creditor for $227 million in the underlying bankruptcy action, and that as such, Everest would need Centrix to win the adversary case against AIG in order to receive any of that money. *AIG's Brief in Opposition*, [Docket Entry No. 5, *5]. AIG claims the instant motion is "a canard intended to keep AIG from discovering facts that will help its case." *Id.* at 6. Furthermore, AIG claims that Everest has an agreement with the Trustee in the bankruptcy matter which classifies its claims as "allowed" and unobjectionable. *Id.* at 8.

AIG also places heavy emphasis on the Colorado Court's holding that Everest has "relevant, discoverable information." *Id.* at 7. AIG claims that their five topics of inquiry are "narrowly tailored to avoid an undue burden on Everest." *Id.* at 8. AIG contends that Everest has not met their heavy burden of proving that the subpoenas are unreasonable or oppressive in

nature.  Further, AIG contends that they have exhausted all relevant testimony from Centrix and that the information remaining can only be sought from Everest. *Id.* at 12-13.

To the extent that Everest challenges the subpoenas as irrelevant, AIG quotes the language from the Fidelity Bond policy, which requires Centrix to be "aware of facts which would cause a *reasonable person* to assume that a loss of a type covered by this bond has been or will be incurred[.]" *Id.* at 11, quoting Bond at Sec. 3 (Ex. 3).  AIG argues that, while the material question is what Centrix knew, Everest's testimony will be relevant as to what the reasonable person should have known and therefore, "could be highly relevant to whether there is coverage under the Fidelity Bond." *Id.* AIG claims that such information could not be obtained from Centrix and that therefore, any testimony from Everest would likewise be nonduplicative. Additionally, the issue of whether "knowledge of the Fidelity Bond is a prerequisite for the discovery of a covered loss" is an outstanding issue in the adversary proceeding and AIG argues that Everest's testimony will be relevant regarding that issue.

AIG cites a prior decision of this Court which outlines seven factors to consider in balancing the burden of a subpoena to its conferred benefit. *See OMS Investments, Inc. v. Lebanon Seaboard Corp.*, Civil Action No. 08-2681 (AET), 2008 WL 4952445, *2 (D.N.J. Nov. 18, 2008), *infra.* They are: 1) the party's need for the production; 2) the nature and importance of the litigation; 3) relevance; 4) the breadth of the request for the production; 5) the time period covered by the request; 6) the particularity with which the documents are described; and 7) the burden imposed on the subpoenaed entity. *Id.* AIG contends that all seven factors cut in their favor of enforcing the subpoenas.  They claim that all discovery has been exhausted from Centrix, the litigation will result in tens of millions of dollars, the information sought is relevant,

the issues are pointed and narrow, and the burden to Everest is low.  *AIG's Brief in Opposition,* [Docket Entry No. 5, *15].  Lastly, AIG argues that the testimony sought regarding the complaint in the Everest Lawsuit is not protected by the attorney-client privilege because "a party is entitled to discovery of the documents that support the allegations in a complaint." *Id.* at 16.

    C.    **Everest's Reply**

Everest replies by stating that any interest they may have in the bankruptcy action is irrelevant to this case and that AIG fails to cite to any case law which holds otherwise. Furthermore, Everest attacks AIG's reliance on the Colorado Court's determination that Everest has "relevant, discoverable information" by arguing that that decision is not determinative of whether the subpoenas were proper and therefore, the ruling is irrelevant for purposes of this motion.

As to the relevancy of Everest's testimony, Everest rebuts the claim that their knowledge of certain facts is relevant in light of the "reasonable person" language in the Bond.  Everest asserts that any knowledge of theirs is irrelevant to show what Centrix may or may not have known. Furthermore, Everest states that "even if AIG could show that Centrix knew some of the same facts as Everest, Everest's interpretation of those facts would not be admissible to show what a 'reasonable person' would have concluded in possession of the same facts." *Everest's Brief in Reply,* [Docket Entry No. 7, *9].  Likewise, Everest challenges the proposition that Everest's knowledge of the Fidelity Bond is relevant. Everest argues that the link between Everest's testimony and any relevancy it may have is "far too attenuated" because AIG's argument is based on "*if* such knowledge is deemed relevant by the Court, and *if* Everest's information can show whether or when *Centrix* became aware of the Fidelity Bond [.]" *Id.* at 10.

Everest reemphasizes that any possible relevant information they could produce is already available to AIG through the documents from Centrix and the Centrix bankruptcy. *Id.* at 11. Furthermore, Everest argues that any conceivable benefit to AIG would be far outweighed by the burden sustained by Everest in complying with the subpoenas. Everest maintains that "[a]t least five of the seven factors that AIG cites...cut heavily in favor [of] granting Everest's Motion to Quash." *Id.* at 12. Everest relies again on the certification of Kevin Helewa, that states that compliance "would require Everest to locate and retrieve tens of thousands, if not hundreds of thousands, of documents in storage and review all of the documents to recreate the thinking behind a lawsuit filed in 2007 that never progressed very far." *Id.* at 13.

Finally, Everest reaffirms their belief that at least some of the document sought are protected by the attorney-client privilege and requests that, at a minimum, the subpoenas be tailored accordingly.

**II.     Analysis**

Federal Rule of Civil Procedure 26 governs the scope of discovery in federal litigation. Pursuant to Rule 26(b)(1), the scope of permissible discovery is quite broad. Indeed, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Rule 26(b)(1). Nevertheless, while undeniably broad, there are limits to the permissible scope of discovery. For example, Rule 26(b)(2)(C) specifically requires courts to limit discovery where "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive" and where "the burden or expense of the

9

proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Rule 26(b)(2)(C)(i) & (ii). Similarly, pursuant to Rule 26(c), "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]"

Discovery sought via a subpoena issued pursuant to Rule 45 must fall within the scope of discovery permissible under Rule 26(b). *OMS Investments, Inc. v. Lebanon Seaboard Corp.*, Civil Action No. 08-2681 (AET), 2008 WL 4952445, *2 (D.N.J. Nov. 18, 2008). In addition, pursuant to Rule 45(c)(1), "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena" and the Court has a responsibility to enforce this duty. However, it is the party claiming undue burden that must establish same. *Nye v. Ingersoll Rand Company*, Civ. No. 08-3481 (DRD), 2011 WL 253957, *6 (D.N.J. Jan. 25, 2011); *OMS Investments*, 2008 WL 4952445 at *2. If a subpoena falls outside the scope of permissible discovery, the Court has authority to Quash or modify it upon a timely motion by the party served. FED.R.CIV.P. 45(c)(3). Specifically, four circumstances exist which require the Court to quash or modify a subpoena. Rule 45(c)(3)(A) provides that:

> (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
> (i) fails to allow reasonable time for compliance;
> (ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides...,
> (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
> (iv) subjects a person to undue burden.

*Id.*

In assessing the burden on the subpoenaed entity against the benefit conferred on the serving party, the Court may consider the following factors:

>    1. The party's need for the production;
>    2. The nature and importance of the litigation;
>    3. Relevance;
>    4. The breadth of the request for the production;
>    5. The time period covered by the request;
>    6. The particularity with which the documents are described; and
>    7. The burden imposed on the subpoenaed entity.

*OMS v. Lebanon*, supra.

The Court finds that the subpoenas at issue must be quashed for several reasons. First, Everest is a non-party and therefore is afforded greater protection from discovery than a normal party. *See Laxalt v. McClatchy,* 116 F.R.D. 455, 458 (D.Nev. 1986); *Stamy v. Packer,* 138 F.R.D. 412, 419 (D.N.J. 1990) ("Initially, it should be noted that the standards for nonparty discovery require a stronger showing of relevance than for simple party discovery.") While the Court is mindful of the interest that Everest has in the underlying litigation, AIG has not produced any case law suggesting that an interested non-party has any lesser protection against unduly burdensome discovery under FED.R.CIV.P. 45. Therefore, the Court finds that Everest is afforded the same heightened protections for discovery as any non-party.

Second, the Court addresses the certification of Kevin Helewa, Associate General Counsel and Vice President of Everest Reinsurance Company and the person most knowledgeable there. As a potential Rule 30(b)(6) witness in this matter, Mr. Helewa states that the thinking behind Everest lawsuit was largely gleaned from facts discovered during Centrix's bankruptcy, that any pertinent documents are identified in the complaint itself, and that to

11

attempt to recreate such thinking would be to endeavor a massive undertaking. The Court is persuaded by Mr. Helewa's testimony. As such, the Court finds that any discoverable information from Everest would simply point AIG to sources that are already available to them, such as the bankruptcy documents and the Everest Complaint. Furthermore, Mr. Helewa states that he has no recollection of communications between Everest and Centrix and that the production of such communications can be obtained from Centrix. The Court has no reason to question this representation. It is therefore not satisfied that AIG has exhausted all potential discovery from Centrix. To the extent communications have already been produced by Centrix, such production by Everest would be duplicative.

Third, the Court is not persuaded that Everest's knowledge of the Fidelity Bond or facts constituting fraud is relevant. While the Court notes that the facts that Everest gathered from the Centrix bankruptcy and used to file the Everest Lawsuit might be of some limited relevance, the Court has already found such testimony to be duplicative of information already in AIG's possession. Moreover, the Court is not persuaded that Everest's knowledge of "bad acts" would be admissible to show Centrix's knowledge of the same. While admissibility is not the threshold inquiry, the Court is nonetheless unpersuaded that it would leave to relevant evidence under Rule 26. Indeed, the Court notes that the language of the Fidelity Bond requires Centrix's actual awareness of certain facts, and that the reasonable person standard applies only to the assumption of losses.[4] Therefore, it seems from the plain language that before assessing the reasonable person's assumption of losses, the awareness of facts must already exist. Accordingly, the Court

---

[4] "[t]he Bond only *requires Centrix to be 'aware* of facts which would cause a *reasonable person to assume* that a loss of a type covered by this bond has been or will be incurred[.]'" *AIG's Brief in Opposition,* Docket Entry No. 5, *11. (emphasis added).

finds Everest's knowledge to have little, if any, bearing on Centrix's knowledge. Additionally, Everest's knowledge of Centrix's knowledge of the existence of the Fidelity Bond is of no moment as the issue is premature because the Colorado Court has not yet decided that such information is relevant.

Lastly, the Court is not persuaded by AIG's argument that none of the information sought is protected by attorney-client privilege. AIG's subpoenas request "[a]ll communications, whether oral or in writing, between Everest and Centrix Financial, LLC - including...attorneys from Squire Sanders, and attorneys from Brown Rudnick" and "all communications, whether oral or in writing, between Everest and the Committee of Unsecured Creditors for Centrix Financial, LLC - including...attorneys from Foley & Lardner." (Ex. A, Attachment A to Certification of Fred L. Alvarez, Esq.) AIG has not claimed that any exception to the attorney-client privilege exists, which would allow them to receive such communications. Without AIG indicating that they would narrow the request to exclude such privileged information, the request must be denied.

In conclusion, the Court finds AIG's subpoenas to be a fishing expedition which compels Everest to identify and produce information which is largely already available to AIG. Several of the requests are irrelevant and inadmissible and more still may fall under the attorney-client privilege. Furthermore, assuming *arguendo* that any testimony or documents which are relevant, nonprivileged, nonduplicative and admissible even exist in Everest's possession, it would be unduly burdensome for Everest to comb through boxes and boxes of paperwork and attempt to locate them. In light of the burden to Everest as well as Mr. Helewa's certification that such information has indeed already been identified, the subpoenas will be quashed. AIG is free to

narrow their inquiries and reissue the subpoenas in a manner consistent with this Opinion.

### III.    Conclusion

       For the reasons set forth above, Everest's Motion to Quash the subpoenas is GRANTED.

An appropriate Order follows.

Dated: December 18, 2012

                                          s/Tonianne J. Bongiovanni
                                          **HONORABLE TONIANNE J. BONGIOVANNI**
                                          **UNITED STATES MAGISTRATE JUDGE**